(91 Misc. Rep. 600)

HALFMOON BRIDGE CO. v. CANAL BOARD et al.

(Supreme Court, Trial Term, Saratoga County.    September, 1915.)

STATUTES ⬤➣35½.—ENACTMENT—AMENDMENT TO BARGE CANAL ACT—APPROVAL BY PEOPLE.

Laws 1913, c. 801, amending the Barge Canal Act (Laws 1903, c. 147), by which private bridges and their franchises were made subject to condemnation for the Barge Canal, was violative of Const. art. 7, § 4, pursuant to which the Barge Canal Act became a law, where the vote of approval by the people required by such constitutional provision was not taken.

[Ed. Note.—For other cases, see Statutes, Dec. Dig. ⬤➣35½.]

Injunction by the Halfmoon Bridge Company against the Canal Board and others. Judgment for plaintiff.

See, also, 164 App. Div. 919, 149 N. Y. Supp. 1085.

⬤➣For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Thomas O'Connor, of Waterford (Charles A. Collin, of New York City, of counsel), for plaintiff.

James S. Y. Ivins, of New York City, for defendants, other than Acme Construction Company.

BORST, J. The plaintiff owned and operated a toll bridge, spanning the Mohawk river, at Crescent, N. Y., on a section of the river being canalized for the Barge Canal. The canal board has attempted to appropriate a part of plaintiff's lands at each end of the bridge, and this, with its constructions in the river, involves the destruction of the bridge. Plaintiff in this action seeks to enjoin the defendants from destroying the bridge, except on condition that the state build a new bridge for plaintiff on the site of the old one of suitable kind in the place of the one destroyed, or to be destroyed. The defendants deny the liability of the state to restore the bridge and assert the right to destroy it without compensation or substitution of another bridge.

On the pleadings, as originally made, the action was tried and the parties submitted the case for decision. The defendants, however, before a decision was reached by the trial court, procured the passage of an act by the Legislature (Laws 1913, c. 801) amending the Barge Canal Act (Laws 1903, c. 147), by which private bridges and their franchises were made subject to condemnation for Barge Canal purposes, and under such amended act took the necessary proceedings to condemn plaintiff's bridge, and thereafter procured an order permitting the service of a supplemental answer. On the pleadings as so amended the parties have submitted the case on the evidence originally taken before the filing of the supplemental answer, with the further proof by defendants that the bridge has been condemned by the state under the amended act.

The sole question left for determination and now presented is: Was the amended act under which the bridge was condemned within the power of the Legislature to enact? If it was, plaintiff must go to the Court of Claims to secure its damages, and judgment in this action must go to the defendants. As the case stood when the parties first submitted it to the trial court, the plaintiff was entitled to the judgment it was demanding. Barge Canal Act, § 3, as it then was, provided:

"New bridges shall be built over the canal to take the place of existing bridges wherever required, or rendered necessary by the new location of the canal."

It has been held that, under this provision of the statute, the state could not condemn the bridge, but must rebuild it. Halfmoon Bridge Co. v. Acme Construction Co., 157 App. Div. 183, 141 N. Y. Supp. 865; Halfmoon Bridge Co. v. Acme Construction Co., 163 App. Div. 76, 148 N. Y. Supp. 531, reversed on other grounds 213 N. Y. 160, 107 N. E. 344.

The Barge Canal Act became a law pursuant to the provisions of section 4, article 7, of the Constitution, under which obligations could be contracted on behalf of the state for meeting the expense of work of that character, but only under the conditions specified in that section of the Constitution. It provides, however:

"No such law shall take effect until it shall, at a general election, have been submitted to the people, and have received a majority of all the votes cast for and against it at such election. On the final passage of such bill in either house of the Legislature, the question shall be taken by ayes and noes, to be duly entered on the journals thereof, and shall be: 'Shall this bill pass, and ought the same to receive the sanction of the people?' The Legislature may at any time after the approval of such law by the people, if no debt shall have been contracted in pursuance thereof, repeal the same, and may at any time, by law forbid the contracting of any further debt or liability under such law; but the tax imposed by such act, in proportion to the debt and liability which may have been contracted, in pursuance of such law, shall remain in force and be irrepealable, and be annually collected, until the proceeds thereof shall have made the provision hereinbefore specified to pay and discharge the interest and principal of such debt and liability."

It is further provided that:

"No such law shall be submitted to be voted on, within three months after its passage or at any general election when any other law, or any bill shall be submitted to be voted for or against."

Before the Barge Canal Act could become a law its passage was required with certain formalities as we have seen, not prescribed for the passage of ordinary enactments by the Legislature, and then went to the people for their approval. If it could be amended by the Legislature, except in the manner prescribed by the Constitution, the formality of its passage is not apparent. If the act could be changed or nullified at the will of the legislative body, its approval by the people would seem to have been without reason or necessity. If it was contemplated that it might be amended generally by the Legislature, then the provision for the specified amendment contained in the Constitution is without force or effect.

It thus appears that the amendment to the Barge Canal Act sought to be upheld in this action is in direct conflict with the plain provisions of the Constitution. The vote of approval by the people was required and taken with the understanding that the act could only be modified in the two ways specified by the Constitution, and it was not so modified. If that expression of approval by the people upon an act is to stand for anything more than a mere formality, the amendatory act in question must fail of sanction by the court. The Legislature was therefore without authority to pass the amendatory act, and the proceeding taken under it to condemn plaintiff's bridge and franchises for the uses of the state was without authority and must fail.

A decision may be prepared for signature granting plaintiff the relief prayed for in the complaint, with costs.

Judgment accordingly.